EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sylvia M. Bedrosian Heres, Ian Corretjer Andino y la Sociedad Legal de Bienes Gananciales por ambos compuesta<br><br>Recurridos<br><br>v.<br><br>Nestlé Purina Petcare, h/n/c Purina Puerto Rico; Lucianne Hernández Abril; Roadtrip Production, Inc.; Mónica D. Santa Rodríguez<br><br>Peticionarios | Certiorari<br><br>2020 TSPR 158<br><br>205 DPR _____ |

Número del Caso:  CC-2019-192


Fecha:  22 de diciembre de 2020


Tribunal de Apelaciones:

    Panel V


Abogados de la parte peticionaria:

    Lcdo. Luis A. Oliver Fraticelli
    Lcda. Shylene De Jesús Rivera


Abogado de la parte recurrida:

    Lcdo. Francisco Ortiz Santini


Materia:  Derecho Marcario - Ley de Marcas del Gobierno de Puerto Rico, Ley Núm. 169 de 16 de diciembre de 2009, según enmendada. Distinciones entre una marca descriptiva y una marca genérica


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sylvia M. Bedrosian Heres, Ian Corretjer Andino y la Sociedad Legal de Bienes Gananciales por ambos compuesta<br><br>Recurridos<br><br>v.<br><br>Nestlé Purina Petcare, h/n/c Purina Puerto Rico; Lucianne Hernández Abril; Roadtrip Production, Inc.; Mónica D. Santa Rodríguez<br><br>Peticionarios | **Núm.** CC-2019-0192 |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 22 de diciembre de 2020

En esta ocasión, nos corresponde determinar si el Tribunal de Apelaciones erró al revocar parcialmente una sentencia dictada por el Tribunal de Primera Instancia luego de concluir que en el caso de epígrafe podía instarse una reclamación válida al amparo de la *Ley de Marcas del Gobierno de Puerto Rico*, Ley Núm. 169 de 16 de diciembre de 2009, según enmendada, 10 LPRA sec. 223 *et seq.* (Ley Núm. 169).

## I.

El 27 de agosto de 2018, la Sra. Sylvia M. Bedrosian Heres, el Sr. Ian Corretjer Andino (en adelante, matrimonio Corretjer-Bedrosian) y la sociedad legal de gananciales compuesta por éstos instaron una *Demanda* en contra de Nestlé Purina Petcare (en adelante, Nestlé), h/n/c Purina Puerto

Rico, la Sra. Lucianne Hernández Abril[1], Roadtrip Production, Inc. y la Sra. Mónica D. Santa Rodríguez.[2] En ésta, el matrimonio Corretjer-Bedrosian alegó que la señora Bedrosian Heres era la creadora de la marca de fábrica y servicios "*Pet Friendly*" y que ésta acuñó por primera vez esta frase en el mes de marzo del año 2016. Según el matrimonio Corretjer-Bedrosian, esta frase en su significación secundaria alude a "fomentar una cultura de sensibilidad y aceptación a los animales en Puerto Rico, especialmente a los perros". *Demanda*, Ap. en la pág. 328. Además, éste expuso que, por medio de la frase "*pet friendly*", designan espacios y negocios en Puerto Rico en los cuales se acepta la presencia de mascotas.[3] *Id.*

El matrimonio Corretjer-Bedrosian arguyó que los demandados publicaron diversas promociones para el evento "*Purina Pet Friendly Week*", o "*Purina Puerto Rico Pet Friendly Week*", celebrado en el año 2016, con la intención de usurpar y diluir la marca y frase "*pet friendly*" en su

---

[1] Según la *Demanda*, la señora Hernández Abril laboraba como funcionaria ejecutiva de Purina Puerto Rico al momento de los hechos. Ésta era la encargada de la promoción y mercadeo de las marcas de fábrica y servicios pertenecientes a dicha empresa.

[2] El 29 de agosto de 2018, el matrimonio Corretjer-Bedrosian presentó una *Demanda Enmendada* a los únicos fines de rectificar la designación de los demandados identificados en el epígrafe. Específicamente, corrigió que era la compañía Nestlé Puerto Rico Inc. la que hacía negocios bajo Nestlé Purina Petcare y Purina Puerto Rico. *Demanda Enmendada*, Ap. en las págs. 312-321.

[3] Para esto, los negocios autorizados por la señora Bedrosian Heres exhiben el logo de la marca "*Pet Friendly*" y son promocionados por ésta en sus redes sociales.

significación secundaria. *Id.* en las págs. 329-331. Alegó, asimismo, que las promociones para ese evento incluían un logo muy similar al de la marca de la señora Bedrosian Heres. Según adujo el matrimonio Corretjer-Bedrosian, esto pudo confundir al público, y generar la impresión de que la marca "*Pet Friendly*", y la frase análoga, pertenecían a Nestlé. *Id.* en la pág. 332. Como resultado de lo anterior, el matrimonio Corretjer-Bedrosian afirmó que la señora Bedrosian Heres fue privada de oportunidades comerciales.

Además, el matrimonio Corretjer-Bedrosian arguyó que los demandados se apropiaron y materializaron unas ideas que habían sido compartidas con éstos por la señora Bedrosian Heres. Entre estas ideas figuraban la creación de una aplicación para los sistemas operativos de teléfonos inteligentes y de un registro de negocios en una página de internet que permitiera a los usuarios localizar establecimientos "*pet friendly*". *Id.* en las págs. 332-333.

Por todo lo anterior, amparándose en las disposiciones de la Ley Núm. 169, el matrimonio Corretjer-Bedrosian solicitó que se emitiera un interdicto preliminar y permanente para prohibir a los demandados el uso de la marca "*Pet Friendly*" y de la frase "*pet friendly*", evitar que se continuara con el desarrollo y promoción de la aplicación, así como del registro de negocios. Éstos solicitaron una compensación en daños económicos y la concesión de daños estatutarios "conforme provee la Ley de Propiedad Intelectual de Puerto Rico", *Ley de Propiedad Intelectual*

*de Puerto Rico*, Ley Núm. 96 de 15 de julio de 1988, según enmendada, 31 LPRA sec.1401, *et seq.* (Ley Núm. 96)[4] *Id.* en las págs. 334-335.

Así las cosas, el 28 de agosto de 2018, el Tribunal de Primera Instancia emitió una *Orden* mediante la cual señaló una vista para el 6 de septiembre de 2018 con el propósito de dilucidar la procedencia del interdicto preliminar solicitado por el matrimonio Corretjer-Bedrosian. *Orden*, Ap. en las págs. 323-324.

El 5 de septiembre de 2018, los demandados Nestlé y la señora Hernández Abril comparecieron mediante una *Solicitud de desestimación y oposición a solicitud de injunction preliminar*. En lo pertinente, Nestlé y la señora Hernández Abril indicaron que procedía la desestimación de la demanda de conformidad a la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5), pues la demanda incoada dejaba de exponer una reclamación que justificara la concesión de un remedio a la luz de la Ley Núm. 169 y de la Ley Núm. 55. *Solicitud*, Ap. en la pág. 267. Ello, pues expresaron que -aun tomando como ciertas las alegaciones materiales de hecho expuestas en la demanda- el matrimonio Corretjer-Bedrosian no demostró que tuviera derechos sobre una marca válida que ameritara protección bajo alguna de las legislaciones anteriormente

---

[4] Esta legislación fue derogada por la *Ley de Derechos Morales de Autor de Puerto Rico*, Ley Núm. 55 de 9 de marzo de 2012, 31 LPRA sec. 1401 *et seq.* (Ley Núm. 55).

citadas. Éstos indicaron, además, que no se cumplieron los criterios necesarios para la emisión del interdicto preliminar estatutario.

Destacaron que, según surge de la demanda, los demandantes no disponían de un Certificado de Registro expedido por el Registro de Marcas y Nombres Comerciales (en adelante, Registro de Marcas) ni por el United States Patent and Trademark Office (en adelante, USPTO, por sus siglas en inglés). *Id.* Nestlé y la señora Hernández Abril argumentaron, además, que la frase "*pet friendly*" era un término genérico que no es registrable ni puede ser apropiado o utilizado exclusivamente por una persona o entidad para identificar productos y/o servicios.[5] *Id.*

Para sustentar su contención de que la marca era una genérica, hicieron referencia a diversas fuentes e incluyeron varios enlaces a páginas de internet mediante notas al calce. Asimismo, la *Solicitud* se acompañó con varias capturas de pantalla ("*screenshots*") e impresiones de las diversas fuentes; entre éstas: artículos de periódicos, blogs, promociones y páginas de redes sociales, en su mayoría de Puerto Rico. Mediante éstas, se pretendía demostrar que el término "*pet friendly*" había sido

---

[5] Uno de los fundamentos esbozados por Nestlé y la señora Hernández Abril para demostrar el carácter genérico y común de la frase "*pet friendly*" fue la definición del término provista por el *Cambridge Dictionary*. ("used to describe a place that is suitable for pets or where you can stay with your pet.") https://dictionary.cambridge.org/dictionary/english/pet-friendly (última visita 1 de agosto de 2020).

utilizado por múltiples entidades, establecimientos e individuos en distintas plataformas y medios desde mucho antes de que la señora Bedrosian Heres alegadamente acuñara la frase. *Id.* en las págs. 285-310.

El 6 de septiembre de 2018, el matrimonio Corretjer-Bedrosian presentó una *Oposición a la Solicitud de Desestimación*. En síntesis, expresó que la comparecencia de Nestlé y la señora Hernández Abril mediante una moción de desestimación era ineficaz, toda vez que se discutieron los méritos de la reclamación y se formularon materias nuevas. *Oposición*, Ap. en la pág. 143.

De otro lado, arguyó que el mero uso de la marca y la frase le confiere al matrimonio Corretjer-Bedrosian derechos propietarios sobre las mismas, por lo que ostentar el Certificado de Registro no es una condición indispensable para ello.[6] *Id.* en la pág. 144. Éste adujo que, si bien "*pet friendly*" podía considerarse un término

---

[6] Anejaron, no obstante, una impresión de la página del Sistema de Registro de Marcas y Nombres Comerciales en Línea del Departamento de Estado. Ésta indicaba que el 25 de abril de 2016 se había presentado una solicitud para registrar una marca, la cual era de tipo "diseño/forma especial". La descripción de la marca, según dispuesta en el documento, lee "cara de perro en forma de globo al estilo punto en mapa 'checkpoint' con orejas negras, ojos y boca negra. Letras del logo en azul y negras". Si bien el logo sometido incluyó la frase "*pet friendly*", y en la solicitud de registro se identificó la frase como parte de los "elementos literales" del mismo, nada se estableció sobre el registro de la frase en sí. Cabe destacar que de la impresión surge que el estatus de la solicitud era "sometid[a]". *Anejo Oposición a la Solicitud de Desestimación*, Ap. en la pág. 150.

genérico en el idioma inglés, éste podía convertirse en una marca válida en nuestra jurisdicción. *Id.* en la pág. 145.

Posteriormente, el 8 de septiembre de 2018, comparecieron ante el foro primario Nestlé y la señora Hernández Abril mediante una *Réplica a "Oposición a la Solicitud de Desestimación"*. *Réplica*, Ap. en las págs. 239-256. En ésta, esbozaron esencialmente los mismos argumentos esgrimidos en la solicitud de desestimación. Además, en la nota al calce número cuatro (4) de este escrito, Nestlé y la señora Hernández Abril solicitaron al tribunal de instancia que tomara conocimiento judicial de los documentos -capturas de pantalla e impresiones- contenidos en su solicitud de desestimación.[7] *Réplica*, Ap. en la pág. 153. El 10 de septiembre de 2018,[8] el matrimonio Corretjer-Bedrosian presentó una *Dúplica a la Réplica de Nestlé Puerto Rico et als*. *Dúplica*, Ap. en las págs. 230-237.

Así las cosas, el 17 de septiembre de 2018, el foro primario emitió una *Orden* mediante la cual dejó sin efecto el señalamiento de vista evidenciaria que estaba pautada para el 20 de septiembre de 2018. Esto, para evaluar los

---

[7] Anejaron, además, un artículo de un periódico local, con fecha del 15 de mayo de 2009, cuyo copete leía: "Pet Friendly [:] Cada vez son más las hospederías y los sitios públicos que aceptan animales de compañía".

[8] Ese mismo día, la señora Bedrosian Heres presentó un *Aviso de Desistimiento Parcial*, por vía del cual desistió de su reclamación interdictal contra las co-demandadas Roadtrip Productions Inc. y Mónica D. Santa Rodríguez. *Aviso*, Ap. en la pág. 228.

diversos escritos presentados por las partes y realizar las determinaciones correspondientes a la moción dispositiva presentada por Nestlé y la señora Hernández Abril. *Orden*, Ap. en la pág. 226.

Finalmente, el 24 de octubre de 2018, el Tribunal de Primera Instancia emitió una *Sentencia*. El foro primario resolvió que, en virtud de las disposiciones de la Ley Núm. 169, el término "*pet friendly*" era uno genérico. Por lo tanto, éste no estaba sujeto a ser apropiado o utilizado exclusivamente por la señora Bedrosian Heres ni persona alguna en particular. *Sentencia*, Ap. en la pág. 224. Incluyó en apoyo a su determinación la definición del término "*pet friendly*" según dispuesta en el Cambridge Dictionary.

Asimismo, determinó que la frase "corroboradamente se utilizaba en este territorio precisamente para identificar los servicios para los cuales la parte demandante la reclama desde años antes de que ésta la 'acuñara' en el comercio en marzo de 2016". *Id.* El tribunal de instancia dictaminó, entonces, que no procedía la concesión de remedio bajo los *injunction* estatutarios presentados, ni por las reclamaciones de conformidad con la Ley Núm. 55.

Con relación a la reclamación instada bajo ese estatuto, el foro primario concluyó que las alegaciones sobre la apropiación no autorizada de las ideas de la señora Bedrosian Heres eran improcedentes pues esta legislación no otorga protección a las ideas ni a los derechos del autor en su vertiente de derechos patrimoniales. *Id.* Como

consecuencia, el foro de instancia desestimó la demanda con perjuicio, pues concluyó que la señora Bedrosian Heres no tenía una causa de acción que justificara la concesión de un remedio. *Id.* en la pág. 225.

Insatisfecho, el 2 de noviembre de 2018, el matrimonio Corretjer-Bedrosian recurrió ante el Tribunal de Apelaciones mediante un recurso de *Apelación Civil*. *Apelación*, Ap. en la pág. 73. En ésta, alegaron que el Tribunal de Primera Instancia incidió al privarlos de su día en corte y por negarle remedios a tenor de la normativa vigente sobre propiedad intelectual. Igualmente, reiteraron que el tribunal de instancia había errado al evaluar la moción presentada por Nestlé y la señora Hernández como una solicitud de desestimación y no como una moción de sentencia sumaria. *Id.* en la pág. 76.

Por su parte, el 3 de diciembre de 2018, Nestlé y la señora Hernández Abril presentaron ante el foro apelativo intermedio un escrito titulado *Alegato en Oposición a Apelación*. *Alegato*, Ap. en la pág. 44. En su alegato, Nestlé y la señora Hernández Abril indicaron que procedía que el Tribunal de Primera Instancia tomara conocimiento judicial de los documentos "generados por fuentes confiables y de fácil corroboración" que fueron anejados a su moción de desestimación, pues así lo habían solicitado. *Id.* en la pág. 49.

Así las cosas, el 22 de enero de 2019, el Tribunal de Apelaciones notificó una *Sentencia* mediante la cual revocó

parcialmente el dictamen apelado en cuanto a la desestimación sobre la reclamación bajo la Ley Núm. 169. *Sentencia*, Ap. en la pág. 25. El foro apelativo intermedio concluyó que los anejos comprendidos en la moción de desestimación presentada por Nestlé y la señora Hernández Abril tuvieron el efecto de introducir materias nuevas. Por consiguiente, el foro intermedio indicó que el tribunal de instancia estaba obligado a considerar la moción de desestimación como una de sentencia sumaria bajo la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. *Id.* en la pág. 34.

Según el criterio del Tribunal de Apelaciones, una evaluación de las alegaciones enunciadas en la demanda develó que de éstas surgen hechos suficientes para que el foro primario concluyera que el matrimonio Corretjer-Bedrosian podría tener una causa de acción que justificara la concesión de un remedio al amparo del estatuto que rige el derecho marcario puertorriqueño. *Id.* De otra parte, el foro apelativo intermedio precisó que el Tribunal de Primera Instancia actuó correctamente al desestimar el reclamo bajo la Ley Núm. 55. Ambas partes presentaron oportunamente sendas mociones de reconsideración parcial, las cuales fueron denegadas por el Tribunal de Apelaciones. Ap. en las págs. 3-23.

Inconformes, el 19 de marzo de 2019, Nestlé y la señora Hernández Abril recurrieron ante este Tribunal mediante el recurso de *certiorari* que nos ocupa. En éste, destacan los

mismos señalamientos argumentados ante el foro intermedio mediante su solicitud de reconsideración, a saber: (1) que el Tribunal de Apelaciones erró al concluir que el foro primario debió evaluar la solicitud de desestimación según las normas aplicables a una moción de sentencia sumaria y (2) que incidió al determinar que existe una posibilidad de que el matrimonio Corretjer-Bedrosian tenga una causa de acción válida a la luz de la Ley Núm. 169. *Petición de certiorari*, en la pág. 9. El 31 de mayo de 2019, notificamos una *Resolución* mediante la cual expedimos el recurso.

En su alegato ante este Tribunal, Nestlé y la señora Hernández Abril incluyeron las solicitudes de registro para la marca "*Pet Friendly PR*"[9] y para la marca y diseño "*Pet Friendly*" presentadas ante la USPTO por la señora Bedrosian Heres en las cuales se consignó una renuncia ("*disclaimer*"). Esta renuncia indica que "no claim is made to the exclusive right to use 'pet friendly' apart from the mark as shown." *Suplemento al Apéndice de las Peticionarias*, en las págs. 1-5.

Por su parte, el matrimonio Corretjer-Bedrosian enfatizó, entre otros argumentos, el alegado plagio que hizo Nestlé a su logo. *Id.* en la pág. 8. Asimismo, criticó nuevamente el uso de un diccionario del idioma inglés para

---

[9] De las capturas de pantallas incluidas en la *Demanda*, surge que las redes sociales mediante las cuales se promocionan los lugares aprobados por la señora Bedrosian Heres se identifican como "*Pet Friendly PR*". *Demanda*, Ap. en la pág. 328.

evaluar la significación primaria del término "*pet friendly*". Esto, por considerar que la señora Bedrosian Heres le había infundido un giro semántico a una frase que no forma parte del léxico castellano. *Id.* en la pág. 13. Por lo anterior, sostuvo que el Tribunal de Apelaciones no erró en su dictamen.

Así, pues, con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

## II.

La Ley Núm. 169 es el estatuto rector del derecho marcario en nuestra jurisdicción.[10] El derecho marcario procura, principalmente, evitar la confusión entre el público consumidor sobre el origen del producto o servicio que la marca identifica al promulgar la correcta identificación de la fuente de éstos. De otro lado, persigue resguardar la reputación, plusvalía, así como la calidad que la marca haya desarrollado. *Arribas v. American Home*, 165 DPR 598, 605 (2005); *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 US 189, 198 (1985).

Una marca constituye todo signo o medio -entre los que figuran: palabras, nombres, símbolos, imágenes o estilos

---

[10] Según este Tribunal ha pautado anteriormente, la legislación y jurisprudencia federal sobre marcas es en extremo persuasiva para la resolución de controversias de esta naturaleza. Asimismo, la Exposición de Motivos de la Ley Núm. 169 establece que ésta integra elementos de diversas leyes federales sobre dicho asunto. *Véase*, Exposición de motivos, Ley Núm. 169. *Véanse*, además, *Federation des Ind. v. Ebel*, 172 DPR 615, 626 (2007); *Posadas de PR v. Sands Hotel*, 131 DPR 21, 35 (1992).

comerciales, medios, logos, diseños, colores, sonidos, olores, formas, objetos o una combinación de éstos- que sirva para distinguir en el mercado productos o servicios de una persona de productos o servicios de otro proveedor. 10 LPRA sec. 223(F). Es decir, una marca constituye todo elemento distintivo que permita diferenciar un producto o servicio de otros en el mercado. La Ley Núm. 169 incluye a las marcas de fábrica, marcas de servicio, marcas de certificación y marcas colectivas dentro de su ámbito de protección. Por ser de mayor relevancia para el caso de autos, procede evaluar los contornos que rigen las marcas de fábrica y las marcas de servicios.

Una marca de fábrica es aquella que sirve para discernir entre una empresa, organización comercial o los bienes del propietario de la marca y la de aquellos manufacturados o vendidos por otra persona. Igualmente, ésta persigue indicar la fuente de dichos bienes, aunque no sea conocida. 10 LPRA sec. 223(G). Por otra parte, la marca de servicio caracteriza y distingue los servicios que ofrece una persona de los servicios que ofrece otra. Esta categoría de marca no identifica objetos tangibles, sino una acción o producto inmaterial que realiza el proveedor para satisfacer una demanda. *Posadas de PR*, 131 DPR en la pág. 33. Tal como las otras clases de marcas, por medio de la marca de servicio se orienta al consumidor sobre el origen de éste, aunque no sea uno de renombre. 10 LPRA sec.

223(H). La distinción entre estas marcas estriba entonces en el tipo de actividad comercial que pretenden distinguir.

En nuestra jurisdicción, el derecho propietario sobre una marca se adquiere mediante el uso de ésta en el comercio o por medio del registro de la misma en el Registro de Marcas del Departamento de Estado cimentado en la intención genuina de utilizar la marca en el comercio eventualmente. 10 LPRA sec. 223a. El requisito del uso de la marca en el comercio hace referencia al uso legal de buena fe de ésta y el cumplimiento con este requisito varía según la categoría de marca. 10 LPRA sec. 223(S). Conforme a lo dispuesto en la Ley Núm. 169, una marca se reputa en uso

> 1) en bienes, cuando la marca es colocada de cualquier forma en los bienes; o en sus empaques o contenedores; o en las etiquetas adheridas a los bienes; o en los anaqueles, vitrinas o mostradores; o, si por la naturaleza del bien, se hace impráctico el adherirle una etiqueta con la marca; entonces en documentos asociados con los bienes o su venta; y los bienes son vendidos o transportados en Puerto Rico; y
> 2) en servicios, cuando la marca es usada o desplegada en la venta o promoción de los servicios; y los servicios se llevan a cabo en Puerto Rico.

10 LPRA sec. 223(S)(1)(2)

De esta forma, queda instituido el criterio rector para que una marca alcance protección jurídica: el uso de ésta en determinado mercado y jurisdicción en conexión con el producto o servicio. *Colgate-Palmolive v. Mistolín*, 117 DPR 313, 325 (1986). En virtud de esto, la falta de inscripción de una marca en uso no es óbice para que se le reconozcan derechos propietarios sobre ésta a la persona

natural o jurídica que la haya impulsado. Siendo así, la mera inscripción de la marca podría ceder ante el reclamo de un usuario que demuestre que la empleó con anterioridad, pues éste tiene mejor derecho sobre la misma. *Arriba*, 165 DPR en la pág. 605. Sin embargo, el Certificado de Registro expedido por el Secretario de Estado será "evidencia prima facie de la validez de la marca". 10 LPRA sec. 223j

El Artículo 5 de la Ley Núm. 169 precisa las instancias en las cuales una marca no es registrable, independientemente de su uso, lo que incide en su suficiencia para ser protegida. En lo pertinente, el estatuto dispone que no se registrarán marcas que estriben en

> […]
> (4) **Palabras descriptivas** de los bienes o servicios en los cuales se usa, **a menos que hayan adquirido significación secundaria.**
> (5) **Palabras para indicar el género** de los bienes o servicios en los cuales se usa.
> […]
> (8) Una **marca que sea igual o similar y que pueda causar probabilidad de confusión** en cuanto al origen de los bienes o servicios con otra marca registrada o que se esté utilizando en el comercio en Puerto Rico por otra persona y que se use o usará en bienes o servicios iguales o similares a los de la marca registrada o previamente utilizada en el comercio de Puerto Rico. (énfasis suplido).

10 LPRA sec. 223c

Este Tribunal ha distinguido cuatro (4) tipos de marcas; a saber: (1) genéricas, (2) descriptivas, (3) sugestivas, (4) arbitrarias o imaginables. *Federation des Ind.*, 172 DPR en la pág. 624; *Posadas de PR*, 131 DPR en la

pág. 37. Las primeras dos (2) categorías están incluidas en la Ley Núm. 169 como categorías no registrables. Empero, es necesario resaltar que -como bien menciona la disposición estatutaria anterior- las marcas descriptivas pueden registrarse, y lograr protección jurídica, siempre que hayan alcanzado significación secundaria. En cambio, las marcas sugestivas, arbitrarias o imaginables tienden a identificar fácilmente la procedencia del producto o servicio por lo que gozan de ser inherentemente distintivas y, por ende, acreedoras de protección bajo el derecho marcario. *Posadas de PR*, 131 DPR en las págs. 37-39. *Véase*, además, *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 US 763 (1992).

Una marca arbitraria o imaginable no está relacionada con las cualidades del producto o servicio que identifica. Esta categoría alude a las marcas que surgen de palabras inventadas por los comerciantes, precisamente con el propósito de lograr distintividad, o aquellas que consisten en palabras ordinarias que no están vinculadas con el producto o servicio. *Colgate-Palmolive*, 117 DPR en la pág. 326. Por su parte, las marcas sugestivas precisan que el consumidor emplee su imaginación e ingenio en torno a una característica particular del producto o servicio la cual se resalta. *Id. Véase*, además, *Federation des Ind.,* 172 DPR en la pág. 625. Tanto las marcas arbitrarias o imaginables, como las marcas sugestivas, adquieren protección de forma

inmediata una vez se utilizan en el comercio. *Posadas de PR*, 131 DPR en las págs. 37-39.

Como ya mencionamos, a diferencia de estos tipos de marcas, las marcas descriptivas no pueden ser utilizadas con exclusividad por persona o entidad alguna hasta tanto adquieran una significación secundaria en el mercado. Una marca es descriptiva cuando meramente imparte información al público consumidor sobre algún ingrediente o característica del artículo o servicio, tales como el color, olor, función, dimensiones y la calidad de éste. *Véanse, Colgate-Palmolive*, 117 DPR en la pág. 326; 87 C.J.S. *Trademarks, Trade Names, and Unfair Competition* sec. 52 (2020). La significación secundaria en el derecho de marcas se evalúa desde la impresión y percepción del consumidor. Esto es, el carácter distintivo de una marca descriptiva –la significación secundaria– se agencia cuando el reconocimiento de parte del consumidor es tal que éste asocia la marca directamente con el productor u origen del producto o servicio como fuente única del mismo. *Véase Cooperativa Cafeteros v. Colón Colón*, 91 DPR 372, 386-387 (1964); *Kellog Co. v. National Biscuit Co.*, 305 US 111, 118 (1938). *Véanse*, además, 2 *McCarthy on Trademarks and Unfair Competition* sec. 15:5 (5th ed.) (2020); *Park 'N Fly, Inc.*, 469 US en la pág. 194.

Para acreditar que una marca descriptiva ha adquirido significación secundaria, la Ley Núm. 169 acepta que se presente evidencia de uso continuo de ésta en el comercio

por un periodo de cinco (5) años con anterioridad a la fecha en la que se alega que la misma adquirió dicha significación para los productos o servicios que identifica. 10 LPRA sec. 223. Ello, con el propósito de facilitar que una marca de esta índole logre acceso al Registro de Marcas.

En contraste, una marca se considera genérica cuando ésta se reconoce como el nombre común de una clase, de un género, y no de un producto o servicio proveniente de una fuente determinada. *Véase Colón v. Carlos Martínez, Inc.,* 112 DPR 846 (1982). Así, una marca genérica no se puede utilizar únicamente por persona o entidad alguna si se emplea para identificar un producto o servicio que es parte de esa clase. *Véase United States Patent and Trademark Office v. Booking.com B. V.,* 140 S. Ct. 2298 (2020).

Por lo tanto, si el significado primario de la marca -a partir de la percepción de los consumidores- identifica cierto tipo de producto o servicio, en lugar del productor o proveedor de éste, la marca es un término genérico y no puede ser una marca comercial válida. 87 C.J.S. *Trademarks, Trade Names, and Unfair Competition*, supra. Este tipo de marca no es acreedora de protecciones legales que propendan a permitir su uso exclusivo. Lo anterior, independientemente del significado secundario que haya

podido adquirir la marca. *Posadas de PR*, 131 DPR en la pág. 39.[11]

Si bien las distinciones entre una marca descriptiva y una marca genérica son trascendentales por sus repercusiones en el derecho marcario, la categorización de una marca de una u otra forma muchas veces resulta engorroso. Esto, pues en determinado contexto una marca puede considerarse genérica y en otro, descriptiva o arbitraria. *Posadas de PR*, 131 DPR en la pág. 40. El elemento "genérico" no es -necesariamente- una característica intrínseca o inmutable de una marca. *Véase*, *S. Snow Mfg. Co. v. Snow Wizard Holdings, Inc.*, 829 F. Supp. 2d 437 (E.D. La. 2011).

Es por esto que, en *Colón v. Carlos Martínez*, supra, este Tribunal pautó que una palabra genérica en el léxico de un idioma extranjero no es inherentemente genérica al introducirse y utilizarse en nuestro país. En este caso, la controversia versaba sobre el carácter genérico de la palabra "*barong*" -la cual significa "camisa o guayabera" en el idioma tagalo de las Islas Filipinas- al utilizarse por dos (2) productores de ropa diferentes en el mercado

---

[11] Aun las marcas arbitrarias pudieran advenir genéricas con el uso y el paso del tiempo, dependiendo del significado primario impregnado al término por el consumidor. *Posadas de PR*, 131 DPR en la pág. 40 (citando a *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 374 (1st Cir. 1980), donde se determinó que la marca "*export soda*" se había convertido en una marca genérica en Puerto Rico, pues el consumidor de esta jurisdicción nombraba de esa forma a una clase de galleta).

puertorriqueño. Para esto, se adoptó un estándar relativamente sencillo:

> [S]i el público en general conoce el significado genérico de la palabra en el idioma extranjero, la palabra mantendrá su carácter original. Si el significado genérico no es conocido, o lo es por una porción ínfima de la población general, entonces el vocablo perderá su condición genérica y será susceptible de convertirse en una marca de fábrica válida.

*Id.* en la pág. 849.

Algunos de los factores evaluados por los tribunales al calificar una marca como descriptiva o genérica son: (1) el uso genérico del término por los competidores sin que dicho uso haya sido impugnado, así como el uso genérico de la marca por parte del dueño de ésta; (2) la definición del término en el diccionario, lo que constituye un elemento relevante, aunque no dispositivo; (3) el uso genérico del término en revistas o periódicos especializados; (4) el testimonio de personas en el mercado y (5) encuestas a los consumidores. 87 C.J.S. *Trademarks, Trade Names, and Unfair Competition*, supra. Todos estos factores, evaluados en conjunto, podrían incidir sobre el nivel de protección jurídica al que puede aspirar una marca.[12]

---

[12] Es imperativo enfatizar, pues, que el mero uso y la repetición continua de determinado término, así como la publicidad que se le dé a éste, no le confiere cualidad de marca válida. *Véase*, *DuPont Cellophane Co. v. Waxed Products Co.*, 85 F.2d 75, 30 U.S.P.Q. 332 (C.C.A. 2d Cir. 1936) ("It is not effort but results in the minds of customers that creates trademark rights.").

En tal caso, el diccionario se considera de utilidad como instrumento de análisis para evaluar el significado primario de un término pues presenta "evidencia apropiada y relevante". *Posadas de PR*, 131 DPR en la pág. 41 (citando *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 11 (5th Cir. 1974)). *Véase*, además, *Hasbro, Inc. v. MGA Entertainment, Inc.*, 497 F.Supp.2d 337, 344 ("This dictionary evidence is persuasive because "[i]f the term ... appear[s] in a standard dictionary in lower case, [it is] powerful evidence that the term [is] generic, because nouns and other nominatives listed in dictionaries, save for the occasional proper name, denote kinds rather than specific entities ('dog,' not 'Fido').").

## III.

En nuestra jurisdicción, es un principio medular que, al instar una acción por violación a una marca válida, se evidencie que el uso en el mercado de la otra marca genera una probabilidad, y no una mera posibilidad, de confusión en el consumidor. *Posadas de PR*, 131 DPR en la pág. 36. La probabilidad de confusión se sopesa en virtud del siguiente criterio: que un comprador prudente y razonable adquiera un producto o servicio bajo la creencia de que está comprando otro. *Id.* en la pág. 43.

Para prevalecer en una solicitud de interdicto por una infracción de marca, la parte que reclama debe demostrar: (1) que el nombre sobre el cual desea la exclusividad sobre determinado producto o servicio es protegible o está sujeto

a ser apropiado; (2) que fue quien primero lo utilizó en conexión con su producto o servicio en este foro, Puerto Rico; (3) que existe una probabilidad de confusión al consumidor entre su marca y la del demandado; y (4) […] que dicha probabilidad de confusión le causa un daño irreparable para el cual no posee otro remedio adecuado en ley. *Id.* en la pág. 37.

La determinación sobre si, en efecto, existe una probabilidad de confusión entre marcas dependerá de una evaluación de las circunstancias de cada caso. Algunos elementos que el tribunal debe considerar son: (1) la similaridad entre las marcas; (2) la similaridad entre los productos o servicios; (3) la fuerza de la marca o su distintivo; (4) la intención del segundo usuario al adoptar la marca; y (5) evidencia de confusión actual o real. *Id.* en la pág. 45.

A su vez, la Ley Núm. 169 provee una causa de acción contra quien infrinja el derecho de uso exclusivo de una persona sobre una marca. Ésta dispone que

> Cualquier persona que, sin el consentimiento del titular registral o del dueño de una marca, reproduzca, falsifique, copie, imite, use o intente usar una marca igual o similar a una marca registrada bajo esta Ley, o que se usa en el Comercio de Puerto Rico con anterioridad al uso por parte de tal persona, que pueda causar probabilidad de confusión o engaño en cuanto al origen de los bienes o servicios o en cuanto a endoso o asociación, será responsable en una acción civil al titular registral, o al dueño, y/o a la persona con autorización por escrito de parte del dueño de la marca, y cualquiera de los cuales podrá presentar una demanda contra tal persona y solicitar un interdicto, orden de

incautación, daños y/o cualquier otro remedio que
en derecho proceda.

10 LPRA sec. 223w

## IV.

A pesar de las irregularidades procesales suscitadas en los foros inferiores, de las cuales ambas partes tomaron provecho al presentar evidencia para apoyar sus planteamientos, queda claro que la desestimación realizada por el Tribunal de Primera Instancia se realizó en función de la patente falta de una reclamación que justificara la concesión de un remedio. Así, la controversia en este caso se reduce a determinar si la frase "*Pet Friendly*" puede utilizarse como una marca de servicio válida en nuestra jurisdicción a la cual le cobija la protección concedida bajo la Ley Núm. 169 y la normativa vigente relacionada al derecho marcario. Veamos.

La parte peticionaria arguye que el foro apelativo intermedio erró al determinar que existe una posibilidad de que el matrimonio Corretjer-Bedrosian tenga una causa de acción válida a la luz de la Ley Núm. 169. Entendemos que le asiste la razón. Debido al manejo del caso en instancia, el Tribunal de Apelaciones debía estudiar la totalidad del expediente -los demás escritos, así como la evidencia presentada por ambas partes- antes de revocar parcialmente el dictamen del foro primario. De haberlo hecho, hubiese notado que, aun ante la inobservancia del tribunal de instancia de ciertas normas procesales, la

parte aquí recurrida no acreditó tener una marca válida sobre la cual poder reclamar derechos propietarios.

En su demanda, la parte recurrida aludió a que la marca y frase "*Pet Friendly*" había adquirido una significación secundaria en el mercado puertorriqueño y que ésta "sirve de referencia para dueños de mascotas sobre aquellos lugares, ya sean públicos o privados, que las aceptan". *Demanda*, Ap. en la pág. 328. Así, la parte recurrida adujo como carácter distintivo, y significación secundaria de su marca, el mismo significado de la frase "*pet friendly*". Tal como hemos expresado anteriormente, en casos como el de autos, la definición de una palabra o frase en el diccionario resulta particularmente útil. En este sentido, una búsqueda de esta frase en el diccionario que examinó el foro primario devela que en el idioma inglés "*pet friendly*" se define como el término que se utiliza para describir un lugar que es apto para mascotas o donde se pueda estar en compañía de éstas (traducción nuestra).[13] Resulta un contrasentido alegar que la marca "*pet friendly*" ha adquirido un carácter distintivo en el mercado y, al mismo tiempo, esbozar como significación secundaria lo que, a todas luces, es la definición primaria del término.

---

[13] https://dictionary.cambridge.org/dictionary/english/pet-friendly (última visita 1 de agosto de 2020).

Es decir, en su demanda, el matrimonio Corretjer-Bedrosian indicó que el término "*pet friendly*" es un referente para identificar los lugares que aceptan mascotas y no así para distinguir los servicios que la señora Bedrosian Heres ofrece de los provistos por sus competidores. Ya hemos expresado que la significación secundaria -diferenciación en el mercado a la que sólo pueden aspirar las marcas descriptivas para alcanzar protecciones marcarias- implica, necesariamente, que el término remita al origen, al productor del bien o al proveedor del servicio, y no al bien o servicio en sí.

Evaluada la totalidad del expediente ante nos, concluimos que el término "*pet friendly*" es uno de carácter genérico en este foro, Puerto Rico y, consecuentemente, es incapaz de señalar una fuente específica de productos o servicios. Tanto la demanda, como el resto del expediente, se encuentran desprovistos de aseveraciones que tiendan a demostrar que la marca es una descriptiva y que ésta ha adquirido significación secundaria.

De igual manera, no podemos acoger la propuesta de la parte recurrida de que dicho anglicismo no es conocido en nuestra jurisdicción y, mucho menos, que sus circunstancias son comparables con el uso de un término en un idioma poco conocido en Puerto Rico -como lo es el tagalo- al emplearse como marca de fábrica, así como con las repercusiones jurídicas que esto suscitó. *Véase Colón v. Carlos Martínez, Inc.*, supra.

Por lo tanto, "*pet friendly*" describe el género o clase de lugares que permiten la presencia de mascotas en sus inmediaciones, en nuestra jurisdicción y en otras. Éste es, entonces, el término coloquial usado en Puerto Rico para identificar los servicios mismos para los cuales la parte recurrida procura protección marcaria; entiéndase, lugares o negocios donde se aceptan mascotas. Este hecho derriba la contención de que dicha marca es descriptiva y, por ende, susceptible de tal protección. Salvaguardar una marca genérica e impregnarle exclusividad de uso privaría inopinadamente a quienes proveen servicios parecidos de utilizar la terminología que, en efecto, describe e informa la categoría de sus servicios y productos al público consumidor.

Vale destacar que en la propia demanda instada por el matrimonio Corretjer-Bedrosian se empleó el término "*pet friendly*" de forma genérica. Al describir las funciones de la aplicación para teléfonos inteligentes creada por la parte peticionaria, la parte recurrida indicó que ésta procuraba asistir a los dueños de mascotas a "localizar sitios '*pet friendly*'". *Demanda*, Ap. en la pág. 332. En esa ocasión, no utilizaron la frase como su marca propiamente, sino como un indicador de los establecimientos en los cuales se permite la presencia de mascotas. Como mencionamos anteriormente, el uso genérico de la marca por parte del dueño de ésta propende a evidenciar que la marca es una de carácter genérico.

Recalcamos que una marca genérica no puede ser apropiada por persona o entidad alguna ni será merecedora de protecciones legales, independientemente si ha adquirido o no significación secundaria. Por esta razón, no importa cuánta prueba pudiera presentar la parte recurrida para demostrar la alegada significación secundaria adquirida por el término "*pet friendly*", ello no sería suficiente para conferirle las garantías de exclusividad solicitadas.

Si bien ya hemos determinado que la marca es una genérica a la cual no le aplican las garantías provistas por la Ley Núm. 169, estimamos pertinente examinar otros asuntos presentados durante el pleito por la parte recurrida que propugnan nuestra determinación. La parte recurrida alegó que las promociones para el evento "*Purina Pet Friendly Week*", o "*Purina Puerto Rico Pet Friendly Week*", celebrado en el año 2016, incluyeron un logo similar al de la marca "*pet friendly*" con la intención de usurpar y diluir dicha marca en su significación secundaria. Lo anterior, expresó la parte recurrida, pudo tener el efecto de confundir al público y generar la impresión de que la marca "*Pet Friendly*" y la frase análoga pertenecían a Nestlé.

Empero, la demanda presentada por ésta, así como las mociones subsiguientes, estaban desprovistas de alegaciones específicas a los efectos de demostrar que la parte peticionaria haya utilizado su logo o haya llevado a cabo negocios o promociones no autorizadas bajo éste. Además,

las promociones de Purina siempre fueron acompañadas del nombre de su marca con sus características distintivas. Es decir, el logo usado para promocionar estas actividades incluía como elemento el logo propio de la marca Purina, por lo que no nos parece que se haya podido consumar la alegada confusión en el consumidor. Si la mera posibilidad de confusión no es suficiente para reclamar una infracción a una marca, mucho menos puede serlo una mera alegación.

Por otro lado, la parte recurrida expresó en su demanda que las acciones de la parte peticionaria la privaron de oportunidades comerciales. No obstante, éstas no fueron especificadas ni se sometió ningún tipo de evidencia con relación a dichas oportunidades. Incluso, esto resulta más relevante si se considera que la parte recurrida no acreditó que el tipo de servicio provisto por la señora Bedrosian Heres pueda catalogarse como una actividad comercial. Ésta describe su quehacer como "identifica[r] o designa[r] lugares o negocios en Puerto Rico donde se aceptan mascotas, los cuales obtienen autorización […] para exhibir el logo 'Pet Friendly' en sus locales y promocionarse en las redes sociales". Demanda, Ap. en la pág. 328. Habida cuenta de que la protección provista por el derecho marcario está sujeta, precisamente, al uso de las marcas en el comercio, resulta inconcebible que se invoque protección para un calificativo de servicios que no se utiliza en el comercio.

Así, en ausencia de una marca válida, y a la luz de la normativa aplicable del derecho marcario, es forzoso

concluir que la parte recurrida no expuso ni sustentó una reclamación que justificara la concesión de un remedio.

**V.**

Por los fundamentos que anteceden, se revoca el dictamen apelado y se desestima la demanda presentada ante el Tribunal de Primera Instancia.

Se dictará Sentencia de conformidad.


Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sylvia M. Bedrosian Heres, Ian Corretjer Andino y la Sociedad Legal de Bienes Gananciales por ambos compuesta<br><br>Recurridos<br><br>v.<br><br>Nestlé Purina Petcare, h/n/c Purina Puerto Rico; Lucianne Hernández Abril; Roadtrip Production, Inc.; Mónica D. Santa Rodríguez<br><br>Peticionarios | **Núm.** CC-2019-0192 |

SENTENCIA

San Juan, Puerto Rico, a 22 de diciembre de 2020

Por los fundamentos que anteceden, se revoca el dictamen apelado y se desestima la demanda presentada ante el Tribunal de Primera Instancia.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez concurre con el resultado sin opinión escrita.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo